UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CALVIN EARL WRIGHT,

                    Petitioner,

v.                                              CASE NO. 04-74407
                                                HONORABLE GERALD E. ROSEN
JERI-ANN SHERRY,

                    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Calvin Earl Wright has filed a *pro se* application for the writ of habeas corpus

under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions for

criminal sexual conduct and assault with intent to commit sexual penetration.  Respondent urges

the Court to deny the habeas petition on the grounds that Petitioner's claims are procedurally

defaulted, are not cognizable on habeas review, or lack merit.  The Court agrees that Petitioner is

not entitled to relief.  Consequently, the habeas petition must be denied.

## I.  Background

### A.  Trial, Sentence, and Direct Appeal

Petitioner was charged in Tuscola County, Michigan with engaging in sexual activity

with two young girls in 2000.  Consistent with the state court's use of initials for the girls, the

Court will refer to them as "A.B." and "C.G."  The facts have been summarized by the state

court as follows:

> At the time of trial, A.B. was 10-1/2 years old.  A.B. testified that she
> lived with her mother.  However, she further stated that she occasionally stayed
> with defendant, whom she used to refer to as her dad.  A.B. claimed that when she

stayed overnight in defendant's home she slept in many different places. According to A.B., when she fell asleep one night with defendant's stepdaughter, C.G., defendant awakened her, escorted her to his own bedroom, and rubbed her "privates" and "bottom."  The following day, A.B. alleged that defendant repeated these acts and then pushed her head down toward his "private" and told her to rub it.  She stated that she resisted.  A.B. reported that defendant brought her to his room on a third occasion and rubbed her as before.  She added that, "then I had to rub his private and suck his private," which she described as "hard."  A.B. testified to a fourth assault in defendant's bedroom:  "Once again he opened my boxers and rubbed my private and bottom, and I had to suck his private."  According to A.B., defendant told her that if she ever "told anyone that he was doing this, I would never be in his life again."

C.G. testified that she was presently ten years old, and that in October 2000 she lived in defendant's house.  According to C.G., defendant twice touched her breasts when they were alone in the living room, causing her to feel nervous and afraid.  Asked if defendant said anything to her about it afterward, C.G. replied, "The first time he said, 'Don't tell.'"

*People v. Wright*, No. 234645 (Mich. Ct. App. Mar. 20, 2003).

Petitioner did not testify or present any witnesses.  His defense was that he did not do what he was accused of doing and that there was reasonable doubt as to the prosecutor's proofs. On March 15, 2000, a Tuscola County Circuit Court jury found Petitioner guilty of:  two counts of criminal sexual conduct in the first degree, MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration with a person under thirteen years of age); eight counts of criminal sexual conduct in the second degree, MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under thirteen years of age); and one count of assault with intent to commit criminal sexual conduct involving penetration, MICH. COMP. LAWS § 750.520g(1).

Petitioner was fifty-two years at sentencing.  The trial court sentenced him to concurrent terms of imprisonment as follows:  eighteen and a half to thirty years for each first-degree criminal sexual conduct conviction; ten to fifteen years for each second-degree criminal sexual conduct conviction; and five to ten years for the assault conviction.

2

The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case to the trial court for correction of the sentencing information report because the trial court incorrectly assessed fifty points for offense variable 13 of the sentencing guidelines. The Michigan Supreme Court denied leave to appeal on August 29, 2003. *See People v. Wright*, 469 Mich. 878; 668 N.W.2d 152 (2003) (table).

**B. State Collateral Proceedings and the Habeas Petition**

Petitioner filed his habeas corpus petition on November 12, 2004. He raised five claims: (1) the trial court admitted prejudicial evidence of another alleged act of criminal sexual conduct, which occurred years earlier and involved a different complainant; (2) the trial court erred by admitting in evidence Petitioner's statement to the police; (3) the trial court erred in permitting a prosecution witness to give her opinion of the credibility of a complainant; (4) the prosecutor engaged in misconduct; and (5) the trial court miscalculated the sentencing guidelines and relied on inaccurate information at sentencing. After Respondent filed an answer to the habeas petition, Petitioner moved for a stay so that he could exhaust state remedies for several new claims. The Court granted Petitioner's motion because Petitioner had already filed a motion for relief from judgment in the trial court, and his new claims were under consideration in state court.

The trial court denied Petitioner's motion for relief from judgment, and the Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Wright*, No. 263746 (Mich. Ct. App. Mar. 23, 2006). On November 29, 2006, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Wright*, 477 Mich. 939; 723 N.W.2d 822 (2006). The state

supreme court denied reconsideration on February 27, 2007.  *See People v. Wright*, 477 Mich. 1034; 727 N.W.2d 594 (2007).

Petitioner filed a supplemental habeas corpus petition on March 30, 2007.  The supplemental petition raises the following seven claims, which Petitioner presented to the state courts on collateral review:  (6) the trial court violated Petitioner's right to due process when it denied his post-conviction motion; (7) the trial court acted improperly in selecting a jury; (8) he was denied his constitutional right to an impartial jury; (9) the jury instructions were erroneous; (10) he was sentenced on the basis of false and inaccurate information; (11) defense counsel was ineffective at trial and at sentencing; and (12) appellate counsel was ineffective for failing to raise the above issues on appeal.  Respondent argues that:  Petitioner's first, third, and fifth claims are not cognizable on habeas review; the state court's determination on Petitioner's second claim regarding his statement to the police did not involve an unreasonable application of clearly established Supreme Court law; review of Petitioner's fourth claim regarding the prosecutor's conduct is barred by Petitioner's failure to object at trial; and review of claims VI through XII is barred by Petitioner's failure to raise those claims in the appeal of right.

The Court agrees with Respondent for the most part, but in the interests of efficiency, the Court will review the merits of some claims that Respondent contends are procedurally defaulted.  This approach is possible because Petitioner is not entitled to relief, and courts need not address a procedurally defaulted issue before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

**II.  Standard of Review**

4

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III.  Discussion

### A.  Jury Selection

Petitioner alleges that the trial court was acted improperly when it sent a bailiff and deputy sheriff to a local restaurant to recruit potential jurors. Petitioner also alleges that several jurors who decided his case were not fair and impartial.

#### 1.  Procedural Default

5

Petitioner first raised his claim about the jurors in his motion for relief from judgment. The trial court determined that Petitioner could have raised the claim on appeal and that Petitioner had not shown "good cause" and "actual prejudice" under Michigan Court Rule. 6.508(D). The Michigan Court of Appeals and Michigan Supreme Court also denied relief pursuant to Michigan Court Rule 6.508(D). Consequently, Respondent asserts that Petitioner's claim is procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The first element of procedural default is satisfied because Petitioner failed to comply with Michigan Court Rule 6.508(D)(3), which requires defendants in criminal cases to raise all

6

their nonjurisdictional claims on appeal from their convictions and sentences.[1]   The second

element of procedural default is satisfied because all three state courts denied relief on the basis

of Rule 6.508(D).  Rule 6.508(D)(3) was an adequate and independent state ground for the state

court's decision because the rule became effective in 1989 and was "firmly established and

regularly followed" before Petitioner appealed his convictions in 2001.  *Rogers v. Howes*, 144

F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

All three elements of procedural default are satisfied.  Petitioner therefore must show

cause for failing to raise his claims about the jury in the appeal of right and actual prejudice as a

result of the alleged violation of federal law.  Alternatively, he must demonstrate that a

fundamental miscarriage of justice will occur if the Court fails to consider the substantive merits

of his claim.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2.  Cause and Prejudice

Petitioner alleges that his appellate attorney was ineffective for not raising his claim

---

[1]  Rule 6.508(D) reads in relevant part:

   **(D)  Entitlement to Relief.**  The defendant has the burden of establishing
entitlement to the relief requested.  The court may not grant relief to the defendant
if the motion [for relief from judgment]

      . . . .

   (3) alleges grounds for relief other than jurisdictional defects, which could
have been raised on appeal from the conviction and sentence or in a prior motion
under this subchapter, unless the defendant demonstrates

         (a) good cause for failure to raise such grounds on appeal or in
      the prior motion, and

         (b) actual prejudice from the alleged irregularities that support
      the claim for relief.

7

about the jury in the appeal of right.  Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."  *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)).

To prove that Petitioner's attorney was constitutionally ineffective, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 688 and 687.  The prejudice prong of the *Strickland* test requires showing that the result of the proceeding would have been different "but for counsel's unprofessional errors."  *Id.* at 694.  "A reasonable probability is a probability sufficient o undermine confidence in the outcome."  *Id.*  "Unless a defendant makes both showings [deficient performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.  The Court will proceed to review Petitioner's underlying claims about the jury in order to determine whether appellate counsel was ineffective for failing to raise the claim on appeal.

Petitioner's first allegation about the jury is that the trial court used an improper method to select the jury.  The trial court explained the proceeding as follows:

> At the time of jury selection, the court was short some 16 jurors for the jury pool. The court directed the bailiff and a deputy to go into the town and find 16 people to serve as jurors for this case.  The bailiff and deputy went across the street from the courthouse to a café where members of the public [were] having breakfast and

found 16 people to complete the jury pool. These people then became the rest of the jury pool.

*People v. Wright*, No. 00-7939-FC, at 2 (Tuscola County Cir. Ct., June 13, 2005).

Selecting supplemental prospective jurors in this manner can result in a violation of due process. *See Anderson v. Frey*, 715 F.2d 1304 (8th Cir. 1983). The record in this case, however, indicates that only one of the people recruited by the bailiff and sheriff was called as a prospective juror. The trial court excused that juror for "cause." (Tr. Mar. 13, 2001, at 3-4, 11-12.) Under the circumstances, no due process violation occurred.

Petitioner's other allegation about the jurors is that several of them were partial and unfair due to prior service as jurors. Linda Barringer, Kathleen Patterson, and Arthur Haebler served as jurors just two months before Petitioner's trial, but the prior cases involved drunk driving, and all three jurors said that their past experience as jurors would not adversely impact their ability to be fair and impartial in Petitioner's case. (*Id*. at 3, 18, 21-22, 32-33, 170-72.) Sharon Sella also was a juror in another case, but her prior juror experience occurred twenty years before Petitioner's trial, and the prior case involved a theft. (*Id*. at 3, 19-20.) Two other individuals (Hannelore McDonald and Barbara Kern) previously served as jurors in criminal sexual conduct cases, but the prior case did not involve children, and both jurors said that they could be fair and impartial jurors in Petitioner's case. (*Id*. at 4, 22-24, 167-69.)

Petitioner also alleges that he knew one of the jurors who sat on his case and that he owed the juror some money at the time of trial. The juror, Arthur Haebler, did not acknowledge the fact that he knew Petitioner, but Petitioner has not demonstrated that Haebler actually recognized him or was aware that Petitioner owed him money. Petitioner himself did not realize

9

that Haebler was an acquaintance until years after his trial.[2]

Petitioner has failed to show that the jurors who deliberated his case were actually biased against him and that the trial court's method of selecting prospective jurors prejudiced him. Consequently, appellate counsel was not ineffective for failing to challenge the fairness and impartiality of Petitioner's jurors or the trial court's method of recruiting jurors.

Because appellate counsel was not ineffective, he cannot be deemed "cause" for Petitioner's procedural default. The Court finds it unnecessary to determine whether Petitioner has demonstrated the requisite prejudice, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)).

### 3. Miscarriage of Justice

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Although Petitioner claims to be actually innocent of the crimes for which he was convicted, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

---

[2] One could argue that it was impossible for Petitioner to raise his claim about Haebler in the appeal of right because he did not realize at the time that he knew Haebler. Petitioner, however, was made aware of the jurors' names, and he could have investigated possible links between himself and the jurors.

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Petitioner's claims about the jury. His claim is procedurally defaulted.

## B. Evidentiary Issues

### 1. Other Acts Evidence

Petitioner alleges that the trial court erred when it permitted the prosecutor to admit prejudicial evidence of an uncharged act of criminal sexual conduct with the older sister of one of the complainants in this case. Petitioner contends that use of the evidence violated Michigan Rule of Evidence 404(b), state decisions interpreting Rule 404(b), and his constitutional right to fundamental fairness. The Michigan Court of Appeals determined that the trial court did not abuse its discretion in admitting the "other acts" testimony because the evidence was admissible to show Petitioner's common scheme, plan, or system for sexually molesting young girls.

This Court finds no merit in Petitioner's claim because

[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because the Supreme Court has not held that the use of propensity or "other acts" evidence violates the Constitution, the state appellate court's conclusion that the evidence was admissible did not result in a decision that was "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). Petitioner's personal disagreement with the state court's ruling on "other acts" evidence "is not cognizable on federal habeas review inasmuch as it involves no constitutional dimension." *Bey v. Bagley*, 500 F.3d

11

514, 523 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).

### 2. Petitioner's Statement to the Police

Petitioner asserts that the trial court erred by admitting in evidence his statement to the police. Petitioner claims that his statement was inadmissible because it was taken after he requested an attorney.[3]

### a. Legal Framework

The Supreme Court stated in *Miranda v. Arizona*, 384 U.S. 436 (1966), that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id*. at 444. "In *Edwards v. Arizona,* 451 U.S. 477, 485 (1981), the Supreme Court . . . [held] that if an accused requests counsel, the police must cease all questioning 'unless the accused himself initiates further communication, exchanges or conversations with [them].'" *Davie v. Mitchell*, 547 F.3d 297, 321 (6th Cir. 2008).

Courts may not presume a valid waiver of *Miranda* rights from an accused person's silence after warnings are given or from the fact that a confession was eventually obtained; but,

---

[3] Petitioner did not make a confession, and he maintained that he never touched the girls. However, the officer who took Petitioner's statement was permitted to testify at trial that, when he asked Petitioner if he had ever been in bed alone with A.B., Petitioner claimed to be having problems with his memory due to the onset of Alzheimer's disease. And when Petitioner was asked if it was possible that A. B. had gotten into his bed and touched him, he began to cry. He later nodded his head in agreement and sobbed when the officer indicated that people make mistakes and deserve second chances. Petitioner also stated that, on one occasion, the older sister of one of the complainants came into his room, performed oral sex on him, and then crawled away on her hands and knees.

in some cases an accused person's waiver can be inferred from his actions and words.

*Thompkins v. Berghuis*, 547 F.3d 572, __, No. 06-2435, slip op. at 8 (6th Cir. Nov. 19, 2008)

(quoting *Miranda*, 384 U.S. at 475, and *North Carolina v. Butler*, 441 U.S. 369, 373 & 373 n.4

(1979)).  Whether an accused person waived his rights must depend on the facts and

circumstances, including the accused person's background, experience, and conduct.  *Id.*, slip op.

at 11 (quoting *Butler*, 441 U.S. at 374 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

The Court will assume for purposes of this opinion that Petitioner was in custody when

Sergeant Stephen Sipes of the Michigan State Police interrogated him, because he was

questioned by a law enforcement officer after being deprived of his freedom of action in a

significant way.  *Miranda*, 384 U.S. at 444.[4]  The question is whether Petitioner invoked his right

to an attorney and whether Sergeant Sipes refused to honor Petitioner's request before taking a

statement from him.

### b.  The State Court Hearing and the State Court Decisions

At the state court evidentiary hearing in this matter, Sergeant Stephen Sipes testified that

Petitioner asked him once at his home and once at the police station before being interrogated

whether he needed a lawyer.  According to Sergeant Sipes, Petitioner did not say, "I want a

lawyer."  Both times, Sergeant Sipes responded to Petitioner's question by saying that it was up

to Petitioner to decide whether he needed an attorney.  At the police station, Petitioner replied

---

[4] Sergeant Sipes and another officer went to Petitioner's house, positioned themselves at
the two exits to the house, and, after entering the house, either frisked Petitioner or asked him
whether he had any weapons on him.  Sipes then asked Petitioner to accompany him to the
police station in a police car, where Petitioner was placed in an interrogation room and read his
constitutional rights.  Petitioner testified that he did not think he was free to leave either when
Sergeant Sipes declined his offer to drive himself to the police station or later when he was
interviewed at the police station.

that he would make a decision on whether he wanted an attorney after the *Miranda* rights were read to him.  Sipes then advised Petitioner of his constitutional rights.  Petitioner initially stated that he did not understand.  Sikes then explained that Petitioner did not have to speak with him and that he could contact an attorney or have one present.  Petitioner responded that he understood and that he would answer some questions because he was curious about why Sipes wanted to speak with him.  According to Sergeant Sipes, Petitioner never asked to terminate the interview or to consult an attorney, although he did refuse to answer any additional questions later that evening after Sipes had completed the interview and Petitioner had been placed under arrest.

Petitioner testified at the hearing that he told Sergeant Sipes two times at home and two times at the police station that he needed an attorney.  According to Petitioner, Sipes responded that Petitioner did not need one because Sipes was merely investigating and asking questions.  Petitioner also testified at the hearing that he was advised of his *Miranda* rights *after* he was interrogated.

The trial court resolved the conflicting versions of the facts by finding that Sergeant Sipes' testimony was more credible than Petitioner's.  The trial court concluded that Petitioner voluntarily and knowingly waived his right to an attorney after being advised of his constitutional rights.  The Michigan Court of Appeals deferred to the trial court's factual determinations that Petitioner did not request an attorney, but merely asked whether he needed a lawyer, and that Petitioner understood his rights and waived them before giving any incriminating statements.  The court of appeals concluded that the trial court properly admitted Petitioner's statement into evidence.

14

### c. Analysis

Although the ultimate question of whether a suspect's waiver of *Miranda* rights was knowing and intelligent is subject to review under 28 U.S.C. § 2254(d), a state court's subsidiary factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e). *Thompkins*, slip op. at 8-9 (quoting *Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000)). "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The Court therefore concludes that Petitioner did not request an attorney before or during his interview with Sergeant Sipes.

The trial court's legal conclusion that Petitioner's waiver was voluntary and knowing is supported by the record. Petitioner was fifty-two years of age at the time, and he had been investigated for criminal sexual conduct on a prior occasion. He was a high school graduate and had completed two years of college. He had no problems with the English language, and he stated at the time that he was not under the influence of narcotics or alcohol. After Sergeant Sipes clarified the meaning of the constitutional rights, Petitioner had no further questions and he signed the wavier-of-rights form.

Petitioner has failed to show that his constitutional right to an attorney was violated and that his waiver was involuntary and unknowing. He has no right to relief on the basis of his second claim.

### 3. Opinion Testimony

Petitioner alleges that the trial court erred in permitting the mother of one of the complainants to testify that her daughter was truthful. Petitioner argues that, under state law, it

15

is improper for a witness to comment on the credibility of another witness. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Therefore, Petitioner is not entitled to relief on the basis of his third claim.

### C. The Prosecutor

Petitioner alleges next that the prosecutor shifted the burden of proof, denigrated Petitioner and defense counsel, and appealed to the sympathy of the jury. The Michigan Court of Appeals determined that, with one exception, Petitioner failed to preserve his prosecutorial-misconduct claims for appellate review by objecting at trial.

### 1. The Remark to which Defense Counsel did Object

The Court will begin its review of Petitioner's prosecutorial-misconduct claim by analyzing the remark to which defense counsel did object. To prevail on that claim, Petitioner must demonstrate that the prosecutor's conduct infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). When determining flagrancy, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against

the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

The disputed remark in this case occurred on redirect examination of A.B. The prosecutor prefaced one of his questions by stating that the question probably would sound ridiculous, but "there's been a few of those questions already [asked]." (Tr. Mar. 13, 2001, at 276.)

The prosecutor could have been referring to his own questions; he did not say that defense counsel had asked ridiculous questions. In any event, the trial court sustained defense counsel's objection, and the prosecutor proceeded to ask A.B. whether she had kept a record of the criminal incidents. At the close of the case, the court instructed the jurors that the lawyers' statements, arguments, and questions were not evidence, but were meant to help the jurors understand the evidence, the parties' theories, and the witnesses' answers. The court cautioned the jurors to accept things said by the lawyers only if those things were supported by the evidence. (Tr. Mar. 14, 2001, at 227-28.)

The contested remark, while deliberately made, was an isolated comment, which likely did not mislead the jury or prejudice the defense in light of its ambiguity and the trial court's cautionary instruction. The remark did not infect the trial with such unfairness as to deprive Petitioner of due process. Therefore Petitioner is not entitled to relief on the basis of the prosecutor's comment about ridiculous questions.

### 2. The Procedurally Defaulted Claims

Defense counsel did not object to several other remarks made by the prosecutor. Respondent therefore asserts that these claims are procedurally defaulted. The state procedural rule in question requires defendants to preserve constitutional and nonconstitutional claims for

17

appellate review by first raising them in the trial court.  *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999) (unpreserved constitutional error); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994) (unpreserved nonconstitutional error).

Petitioner  maintains that defense counsel was "cause" for his failure to object.  The Michigan Court of Appeals addressed this argument and determined that Petitioner had failed to meet his burden of showing that the result of the proceedings would have been different, but for defense counsel's alleged error.

In order for this Court to determine whether defense counsel's failure to object to the prosecutor's remarks amounted to ineffective assistance, the Court must evaluate the prosecutor's remarks.  "[T]he correct inquiry is whether the improper comments or actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Hawkins v. Coyle*, 547 F.3d 540, __, Nos. 05-4032/4049, slip op. at 11 (6th Cir. Nov. 18, 2008) (quoting *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) (quoting *Darden*, 477 U.S. at 181)).

### a. Shifting the Burden of Proof

Petitioner alleges that the prosecutor shifted the burden of proof during his rebuttal argument by asserting that Petitioner had not established any reason for complainant A.B. to have fabricated her allegations.  (Tr. Mar. 14, 2001, at 218 and 223.)   The prosecutor, however, never stated that defense counsel was responsible for disproving the allegations against him.  His remarks were a response to defense counsel's closing argument that Petitioner was innocent and that the complainants had falsely accused him and fabricated their accusations.  The prosecutor was entitled to wide latitude during his rebuttal argument, *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982) (*en banc*) (citing *DeChristoforo*, 416 U.S. at 637), and his comment that the

18

complainants had no motive to fabricate their allegations were a fair response to defense counsel's closing argument.

### b. Denigrating Petitioner and Defense Counsel

Petitioner alleges that the prosecutor denigrated him and his attorney during closing arguments by stating that defense counsel had testified during his cross-examination of A.B. and had attempted to confuse and wear down the complainants (Tr. Mar. 14, 2001, at 202, 204, and 220.)  While the remarks were critical of defense counsel's method of cross-examination, they did not amount to an "unfounded and inflammatory attack[] on the opposing advocate." *United States v. Young*, 470 U.S. 1, 9 (1985).  The focus of the prosecutor's remarks was the impact of the questions on the complainants and the strain placed on them by having to testify at a young age.  Defense counsel, moreover, deflected the remarks by stating that he had a right to cross-examine witnesses and that he did not think he had been overbearing or too forceful with the witnesses.  (Tr. Mar. 14, 2001, at 207.)

### c. Appealing to the Jury's Sympathy; Civic Duty

Petitioner contends that the prosecutor appealed to the jurors' sympathy and encouraged them to convict him in order to protect the community.  Specifically, the prosecutor stated that Petitioner violated the sacred trust which exists between children and the adults they know.  (Tr. Mar. 13, 2001, at 198-99; Tr. Mar. 14, 2001, at 224).  The prosecutor also stated that the complainants had displayed courage, but that complainant A.B. seemed to shrivel up and place a protective shield around herself when questioned by defense counsel.  (Tr. Mar. 14, 2001, at 202.)  Petitioner maintains that these comments were intended to evoke an emotional response from the jury and to imply that the jury had an obligation to protect the sacred relationship

19

between children and adults.

Prosecutors may not make closing remarks that are wholly irrelevant to any facts or issues in the case in order to arouse the jury's passions or prejudice. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears -- rather than the evidence -- to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir.), *petition for cert. filed*, (U.S. Nov. 5, 2008) (No. 08-7163).

The prosecutor in this case did not encourage the jurors to go outside the evidence or to send a message to the community. Nor did the prosecutor encourage the jurors to convict Petitioner to protect all children. The prosecutor's comments were tied to the evidence. Furthermore, the trial court charged the jurors not to let sympathy or prejudice influence their decision. (Tr. Mar. 14, 2001, at 225.)

### d. Conclusion on Petitioner's Procedurally Defaulted Claims

The prosecutor's disputed remarks did not rise to the level of a constitutional violation depriving Petitioner of due process. Therefore, defense counsel's failure to object to the remarks did not amount to deficient performance. Even if the failure to object amounted to deficient performance, the deficiency did not prejudice Petitioner because the remarks were not egregious, and the trial court charged the jurors that the attorneys' remarks, arguments, and questions were not evidence. Petitioner has failed to show that the result of the proceedings would have been different, but for counsel's failure to object. Therefore, defense counsel cannot be deemed "cause" for Petitioner's procedural default.

The Court need not determine whether Petitioner was prejudiced by the alleged

prosecutorial misconduct, because he has failed to show "cause" for his procedural default of failing to object to the prosecutor's remarks. *Willis*, 351 F.3d at 746. A miscarriage of justice will not occur from the failure to adjudicate the substantive merits of Petitioner's defaulted claims, because Petitioner has not submitted any new evidence to support a finding of actual innocence. *Schlup*, 513 U.S. at 324. Petitioner's prosecutorial-misconduct claims are procedurally defaulted.

### D. The Jury Instructions

Petitioner alleges that the jury instruction on reasonable doubt was circular and provided the jurors with no guidance as to the degree of certainty required. Petitioner also contends that the trial court (1) failed to instruct the jurors on the proper order for considering the charges, (2) failed to charge the jury that it was necessary to reach a unanimous verdict on each separate count, and (3) incorrectly informed the jurors that they must follow the law as given to them by the court.

Although the trial court determined that Petitioner could have raised his claim about the reasonable-doubt jury instruction on appeal from his convictions, the trial court did not address Petitioner's other claims about the jury instructions. Even if the claims are procedurally defaulted, the Court finds it more efficient to consider the merits of the claims than to perform a procedural-default analysis. The alleged procedural default, therefore, is excused.

The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have "violated some right which was guaranteed to the defendant by the Fourteenth

Amendment" or the ailing instruction by itself must have "so infected the entire trial that the resulting conviction violates due process." *Id*. at 146-47.

### 1. Reasonable Doubt

The instruction challenged here reads in pertinent part as follows:

> A reasonable doubt is a fair and honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based upon reason and common sense.

> A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances in this case.

(Tr. Mar. 14, 2001, at 226.)

Petitioner maintains that this instruction misstated the degree of doubt required to acquit him and the degree of certainty required to convict him. The Constitution, however, does not require any particular words in advising a jury of the prosecutor's burden of proof "so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). "Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Id*. (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

The United States Court of Appeals for the Sixth Circuit has upheld the constitutionality of the standard instruction used at Petitioner's trial. *See Binder v. Stegall*, 198 F.3d 177, 178-79 (6th Cir. 1999). The Sixth Circuit stated in *Binder* that, when viewed as a whole, the instruction "adequately conveys the 'concept' of reasonable doubt" and that its "circularity and possible ambiguity does not render the instruction constitutionally infirm." *Id*. at 179. The instruction also "does not suggest to the jury a lowering of the government's burden of proof." *Id*. In light of *Binder*, Petitioner's claim has no merit.

22

## 2.  Unanimity; Order of Deliberations; Following the Law as Given

Petitioner contends that certain other jury instructions also were erroneous.  He faults the trial court for (1) failing to say that the jury's verdict had to be unanimous on each count, (2) failing to instruct the jurors on the proper order of deliberations, and (3) telling the jurors to follow the law as given to them by the court.

On the issue of unanimity, the trial court explained that the jurors must agree on a verdict and that verdict must be unanimous.  The trial court later explained that Petitioner was charged with eleven counts and that each count was a separate crime and must be considered separately. (Tr. Mar. 14, 2001, at 239 and 241.)  These instructions, when considered as a whole, adequately instructed the jurors that their verdict on each count must be unanimous.

Petitioner's claim about order of the instructions is based solely on state law.  "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Lonberger,* 459 U.S. at 438, n. 6).  "So long as the jury is instructed," as it was here, "on the presumption of innocence and the prosecutor's burden of proof, a trial judge's instruction to jurors on the order of deliberations does not violate the presumption of innocence or coerce a verdict."  *Buford v. Warren*, No. 06-CV-13085, 2007 WL 4547906, at * 8 (E.D. Mich. Dec. 19, 2007) (Duggan, J.) (unpublished decision citing *Meade v. Lavigne*, 265 F. Supp.2d 849, 862-63 (E.D. Mich. 2003)).

Petitioner's final allegation about the jury instructions is that the trial court erroneously instructed the jurors to follow the instructions as given to them by the court.  The Court finds no error in this instruction, because "[t]he trial court's role is to clearly present the case to the jury and to instruct it on the applicable law."  *People v. Dobek,* 274 Mich. App. 58, 82; 732 N.W.2d

23

546, 564 (2007), *appeal denied*, 480 Mich. 897; 738 N.W.2d 763 (2007).

To summarize, the jury instructions did not violate a specific constitutional right, nor infect the entire trial with unfairness.  Petitioner therefore is not entitled to relief on the basis of his claims about the jury instructions.

### E.  The Sentence

Petitioner contends that the trial court miscalculated offense variables 10, 11, and 13 of the Michigan sentencing guidelines.  The contention that the state court misinterpreted the Michigan sentencing guidelines is a matter of state concern only.  *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. Sept. 16, 2003) (unpublished opinion citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir.1991), and *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). Therefore, Petitioner's challenge to the scoring of the state sentencing guidelines fails to state a claim for which habeas relief may be granted.  *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001) (Tarnow, J.) (citing *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000)). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*,423 U.S. 19, 21 (1975) ( *per curiam* opinion)).

Petitioner's constitutional argument is that the trial court relied on inaccurate information to sentence him.  To prevail on this claim, Petitioner must show that the trial court sentenced him on the basis of "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).  Sentencing courts may not rely on "extensively and materially false" information, which the defendant had no opportunity to correct.  *Townsend v. Burke*, 334 U.S.

736, 741 (1948).

### 1.  Offense Variables

#### a.  OV 10

Petitioner states that he should not have been scored fifteen points for offense variable 10, because he did not engage in predatory conduct.  He maintains that, at most, he should have been scored ten points because he was convicted of abusing his authority or of exploiting the victims' youth or a domestic relationship.

Offense variable 10 measures exploitation of a vulnerable victim.  *See* MICH. COMP. LAWS § 777.40.  Fifteen points may be assessed for predatory conduct, and ten points may be scored for exploiting a victim's youth or a domestic relationship or for abusing one's authority. MICH. COMP. LAWS § 777.40(1)(a) and (b).

"Predatory conduct" refers to "preoffense conduct directed at a victim for the primary purpose of victimization."  MICH. COMP. LAWS § 777.40(3)(a).  In other words, the conduct must have occurred before the commission of the offense and be directed at a victim for the primary purpose of victimization. *People v.* Cannon, 481 Mich. 152, 160-61; 749 N.W.2d 257, 262 (2008).  The focus of an assessment of points for predatory conduct "is on the exploitation of vulnerable victims."  *Id.*, 481 Mich. at 162; 749 N.W.2d at 263.  "[T]he Legislature did not intend that 15 points be assessed for preoffense conduct involving nothing more than run-or-the-mill planning to effect a crime or subsequent escape without detection."  *Id.*

Complainant A.B. testified that she did not live with Petitioner, but that she would stay overnight at Petitioner's house when he permitted it.  She would sleep in a room with Petitioner's stepdaughter, but Petitioner would come into the room and take her down the

25

hallway into his room while his wife was working or located in another room of the house.  She claimed that this occurred immediately before Petitioner engaged in criminal sexual conduct with her.

Petitioner's alleged conduct occurred at a time and place when his activities would not be detected by his wife or stepdaughter.  The timing of the incidents (when no one else was awake or present) and their location (in the seclusion of his bedroom) are evidence of pre-offense predatory conduct.  *People v. Witherspoon*, 257 Mich. App. 329, 335; 670 N.W.2d 434, 438 (2003).  Thus, the trial court did not rely on materially false information when it concluded that Petitioner engaged in pre-offense conduct for the purpose of victimization.

### b. Offense Variable 11

Petitioner received fifty points for offense variable 11.  Fifty points are appropriate if two or more criminal sexual penetrations arose "out of the sentencing offense."  MICH. COMP. LAWS § 777.41(1)(a) and (2)(a).

Petitioner contends that offense variable 11 should have been scored at zero because he was convicted of two counts of criminal sexual conduct in the first degree.  While it is true that, under the statute, points could not be scored for the penetrations that formed the basis for first-degree criminal sexual conduct, MICH. COMP. LAWS § 777.41(2)(c), complainant A.B. described four penetrations to an investigator.  Therefore, the trial court did not rely on materially inaccurate information when scoring fifty points for two penetrations other than the penetrations that formed the basis for Petitioner's convictions of first-degree criminal sexual conduct.

### c.  Offense Variable 13

Petitioner received fifty points for offense variable 13 (continuing pattern of criminal

behavior).  He claims that he should have received twenty-five points.

The Michigan Court of Appeals agreed that the score should be twenty-five points because the trial court incorrectly considered the same conduct when scoring offense variables 11 and 13.  The court of appeals noted, however, that reducing Petitioner's score by twenty-five points would not affect his total score for the offense variables.

Although the trial court may have erred when scoring offense variable 13, the court of appeals took steps to correct the error, and no prejudice resulted to Petitioner.  His claim that the trial court relied on inaccurate information was rendered moot when the error was corrected.

### 2.  Other Information

Petitioner alleges that he was sentenced on the basis of other inaccurate information, including allegations that he committed a kidnaping in 1993 and criminal sexual conduct in 1977.  He was  never charged for these offenses, and he contends that he did not resemble the composite drawing made of the kidnapper.   Petitioner also contends that the trial court should not have considered the results of a polygraph examination, which indicated that the alleged victim in the 1977 case was being truthful when she accused Petitioner of criminal sexual misconduct.  The trial court concluded that the information was appropriately included in the presentence report and could be considered at sentencing.  The Michigan Court of Appeals did not address this issue on the merits.

The Sixth Circuit has said that

a trial judge in performing his sentencing function may appropriately consider any responsible information of a relevant nature, even though unsworn or derived from an out-of-court source, *Williams v. Oklahoma*, 358 U.S. 576, 79 S. Ct. 421, 3 L. Ed.2d 516 (1959), including evidence of criminal charges for which the defendant may never have been tried.  *See United States v. Metz*, 470 F.2d 1140 (3rd Cir. 1972), *cert. denied Davenport v. United States*, 411 U.S. 919, 93 S.Ct.

27

1558, 36 L.Ed.2d 311 (1973).  *See also United States v. Weston*, 448 F.2d 626 (9th Cir. 1971).

> However, the reliability and truthfulness of the information considered in sentencing remains a matter of fundamental concern.  While the discretion of the sentencing judge is broad with respect to the nature and source of information utilized by him in sentencing, there are nevertheless limitations imposed by the requirements of due process.  These limitations include the requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.

*Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974).

The trial court found a striking resemblance between Petitioner and a composite sketch in the 1993 kidnaping case, but the court stated that it was not certain Petitioner was the kidnapper. Furthermore, the court sentenced Petitioner within the sentencing guidelines even though the court could have sentenced Petitioner to life imprisonment and even though the prosecutor argued in favor of exceeding the guidelines.  The trial court appears to have relied on the testimony at trial, which it found credible, and on the fact that it did not believe Petitioner could be rehabilitated.  This Court concludes that the trial court did not rely on extensively and materially false information that Petitioner had no opportunity to correct.

### 3. Bias

Petitioner maintains that the trial judge was biased and should have recused himself because he was the prosecutor in the 1977 case in which Petitioner was charged with criminal sexual conduct.  As prosecutor, however, the trial court reviewed the allegations against Petitioner and declined to charge him.  At Petitioner's sentencing in this case, the trial court stated that it thought certain contested information was properly included in the presentence report.  The trial court did not display a "clear inability to render fair judgment," or "a deep-

28

seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 551, 555 (1994).[5]   Furthermore, judges are not considered biased or prejudiced "as a result of what they learned in earlier proceedings." *Id*. at 551.   The record does not support Petitioner's allegation that the trial court was biased.

### F.  Trial Counsel

Petitioner contends that his trial attorney was ineffective for failing to:  (1) call an expert witness to testify that adults can convince children that something has happened; (2) object to the prosecutor's remarks; (3) object to the reference to the results of a polygraph test in the presentence report; and (4) investigate the report of kidnaping in the presentence report.  The trial court addressed these claims in its order denying Petitioner's motion for relief from judgment.  The trial court stated that it could not grant relief because the issues were decided against Petitioner on appeal or could have been raised on appeal.

This Court has already determined that defense counsel's failure to object to the prosecutor's remarks did not amount to ineffective assistance of counsel.  Petitioner's remaining claims about trial counsel are procedurally defaulted because he could have raised the claims on appeal, *see* Mich. Ct. R. 6.508(D)(3), and because all three state courts relied on Rule 6.508(D) to deny relief.  Thus, Petitioner must show "cause" for his procedural default and resulting prejudice or a miscarriage of justice in order for this Court to adjudicate the merits of his claims

---

[5]  Although *Liteky* addresses the statutory recusal standards for federal judges, *see* 28 U.S.C. § 455, the Sixth Circuit "has relied on the decision in assessing judicial-bias claims under the Due Process Clause, *see Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002) (stating that '[t]his court has looked to the Supreme Court's decision in *Liteky v. United States* to provide the standard for deciding judicial bias claims' under the Due Process Clause)."  *Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006).

about trial counsel.

Petitioner alleges that his appellate attorney was ineffective for failing to raise a claim about trial counsel.  To prevail on a claim of ineffective assistance of appellate counsel, Petitioner must show that his appellate attorney's performance was deficient and that the deficient performance prejudiced the appeal.  *Strickland*, 466 U.S. at 687.

In order to determine whether Petitioner has satisfied the *Strickland* test, the Court must review Petitioner's underlying claims.  In doing so, the Court notes that defense counsel objected to the allegations of kidnaping in the presentence report, and the trial court does not appear to have relied on the results of a polygraph test when sentencing Petitioner.  The failure to produce an expert witness does not undermine the Court's confidence in the jury's verdict, because the record fails to demonstrate that adults influence the complainants to fabricated their allegations. f The lack of an expert witness did not deprive Petitioner of "a reasonable shot of acquittal," given the strength of the evidence against him.  *Avery v. Prelesnik*, __ F.3d __, __, No. 07-2522, 2008 WL 4977359, at *5 (6th Cir. Nov. 25, 2008).

Trial counsel performed adequately.  Therefore, the Court's "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit," *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Because appellate counsel was not ineffective, Petitioner has failed to show "cause" for his procedural default of failing to raise a claim about trial counsel in the appeal of right.

The Court need not determine whether Petitioner satisfied the "prejudice" prong of the procedural default test because he has not shown "cause."  *Willis*, 351 F.3d at 746.  A miscarriage of justice will not occur from the failure to adjudicate the substantive merits of

30

Petitioner's claim about trial counsel, because Petitioner has not presented the Court with any new and reliable evidence of actual innocence. *Schlup*, 513 U.S. at 324. Petitioner's claim about trial counsel is procedurally defaulted.

### G. Appellate Counsel

Petitioner alleges that appellate counsel was ineffective for not raising claims VI through XI in the appeal of right. An attorney need not raise every nonfrivolous argument suggested by the appellant if counsel decides as a matter of professional judgment not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Notwithstanding *Barnes,* it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). "In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F>3d 340, 348 (6th Cir. 2003) (quoting *Robbins*, 528 U.S. at 289).

Claims VI through XI are not clearly stronger than claims I through V, which Petitioner raised in the appeal of right. Furthermore, the inclusion of claims VI through XI in the appeal of right would not have changed the result of the appeal. *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer*, 264 F.3d at 663). Consequently, appellate counsel's performance was not deficient, and even if it was, the deficiency did not prejudice the defense. Petitioner has failed to establish ineffective assistance of appellate counsel by proving both prongs of the *Strickland* test.

### IV. Conclusion

31

The state courts' adjudications of Petitioner's claims did not result in unreasonable determinations of the facts or in decisions that were contrary to, or unreasonable applications of, clearly established federal law, as determined by the Supreme Court.  Accordingly, the habeas corpus petition [Dkt. 1] and supplemental habeas petition [Dkt. 27] are **DENIED**.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  December 29, 2008

I hereby certify that a copy of the foregoing document was served upon Calvin Wright and counsel of record on December 29, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager